Richard R. Best*
Sanjay Wadhwa (Bar Number 519704)
Alexander M. Vasilescu (Bar Number 2735143)
Gerald Gross*
James Hanson**
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0178 (Vasilescu)
*Not Admitted in NDNY
**Not Admitted in NDNY and will seek to be admitted

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>                           Plaintiff,<br><br>     -against-<br><br>THE ESTATE OF RICHARD VENTRILLA, and<br>CYGNUS CAPITAL MANAGEMENT, LLC,<br><br>                           Defendants. | ECF CASE<br><br>**COMPLAINT**<br><br>5:20-cv-1102 (FJS/TWD)<br><br>**JURY TRIAL<br>DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants The Estate of Richard Ventrilla ("Ventrilla") and Cygnus Capital Management, LLC ("Cygnus") (collectively, the "Defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      From at least September 2015 through at least March 2020, Ventrilla, now deceased, and his company, Cygnus, deceived investors by selling securities and lying about guaranteed 7% to 8% annual interest and returns and stealing assets from investment advisory clients.

2. In total, Ventrilla and Cygnus defrauded at least 22 investors, who invested a total of approximately $989,000, by raising funds through the false guarantees of the 7% to 8% annual interest and returns, and by stealing the vast majority of such funds for Ventrilla's personal use.

3. Recently, Ventrilla's fraudulent scheme has collapsed and only a small amount of investors' funds remains in a frozen bank account.

4. On September 2, 2020, Ventrilla was found dead at his residence. The SEC, therefore, has brought this action against Ventrilla's estate and Cygnus to secure investor funds that remain in the name of Ventrilla and Cygnus, to prevent further harm to investors through the dissipation of assets, and to seek disgorgement stemming from Ventrilla's and Cygnus's wrongdoing so that any funds that remain can be returned to investors who were the victims of the fraud.

## **VIOLATIONS**

5. By virtue of the conduct alleged herein: (a) Ventrilla and Cygnus, directly or indirectly, singly or in concert, have engaged, and Cygnus is engaging, in transactions, acts, practices and courses of business that constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and (b) Ventrilla and Cygnus, directly or indirectly, singly or in concert, have engaged, and Cygnus is engaging, in transactions, acts, practices and courses of business that constitute violations of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], seeking a final judgment: (a) restraining and permanently enjoining Cygnus from engaging in the acts, practices, transactions and courses of business alleged herein; (b) ordering Defendants to disgorge their ill-gotten gains and to pay prejudgment interest thereon; (c) imposing against Cygnus civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and (d) ordering such other and further relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section 214(a) of the Advisers Act [15 U.S.C. § 808b-14(a)].

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14]. Certain of the events constituting or giving rise to the violations alleged herein occurred in the Northern District of New York. For instance, Defendants sold securities to, and solicited investments from, certain investors in this district. Defendants also misappropriated assets located in this district including from investors located in this district. Also, prior to his death, Ventrilla resided in this district, and he and Cygnus maintained an office in this district.

## DEFENDANTS

9.  **Estate of Ventrilla** is the estate of Richard Ventrilla, who at age 61, died on September 2, 2020. At the time of his death, Ventrilla was a resident a resident of Clarence, New York (a suburb of Buffalo), and was the president, sole owner and manager of Cygnus. Neither he nor Cygnus had been registered with the Commission or any state as an investment adviser or in any other capacity. In 1999, Ventrilla pled guilty to one count of extortion and was sentenced to 46 months in prison. *U.S. v. Ventrilla,* 233 F.3d 166 (2d Cir. 2000). On September 2, 2020, Ventrilla was found dead in his home.

10.  The Estate of Richard Ventrilla is the successor in interest to Mr. Ventrilla who is deceased. As of the date of this complaint, the executor of Mr. Ventrilla's estate is unknown.

11.  **Cygnus** is a Delaware limited liability company solely owned and controlled by Ventrilla and located at his home. In response to a Commission subpoena in the investigation preceding this action, neither Cygnus nor Ventrilla produced any documents to the Commission.

## FACTUAL ALLEGATIONS

12.  In the period from at least September 2015 through at least March 2020 (the "Relevant Period"), Ventrilla and his company, Cygnus, defrauded investors by two methods. First, Ventrilla sold notes and/or investment contracts to at least six investors ("Note Investors") using false and misleading material statements, and then misappropriating their funds. Second, Ventrilla made false and misleading statements to at least sixteen other investors who became the Defendants' investment advisory clients ("Advisory Clients"), and then misappropriated their

assets.  In total, during the Relevant Period, Ventrilla and Cygnus defrauded at least 22 investors, who invested a total of approximately $989,000.[1]

### A. Ventrilla and Cygnus Defrauded the Note Investors

13. Defendants sold investments in Cygnus to the Note Investors, which included personal acquaintances, promising them a fixed rate of return to be paid in regular quarterly installments.

14. Several of these investments were documented by notes bearing a one-year term and guaranteeing between a 7% and 8% rate of return.

15. Some Note Investors just had oral agreements with Ventrilla on similar terms. Ventrilla told the Note Investors he would invest funds in publicly traded securities and repay them with trading profits.  Ventrilla also told the Note Investors that he profited from achieving a higher return by trading public securities; that is, he profited by keeping all returns greater than the 7 or 8 percent he promised to pay his investors.

16. Ventrilla's statements to the Note Investors were false and misleading because, at the time, he had no basis for telling investors that his investments would yield profits sufficient to generate the promised returns or that he would use the funds primarily for trading.

17. At the time Ventrilla made these statements to the Note Investors, Ventrilla knew or recklessly disregarded that they were false and misleading.

18. Ventrilla had the Note Investors' funds initially deposited into a Cygnus bank account and then he transferred those funds partially or entirely, to a bank account or a brokerage account in Ventrilla's name.

---

[1]    Ventrilla began his misconduct at least as early as in February 2014.  Between then and June 2015, Ventrilla obtained approximately $450,000 from investors as a result of such misconduct.

19.     Ventrilla knowingly or recklessly deceived the Note Investors by misleadingly omitting to tell them that he was using the vast majority of investor funds for his personal purposes, such as ATM cash withdrawals, food, healthcare, and transportation.

20.     Even his limited trading was not very successful, and Ventrilla was able to pay Note Investors their quarterly returns only by using money from other investors in a Ponzi-like manner.

21.     Ventrilla knew or recklessly disregarded that he had no basis for telling the Note Investors that his trading would be sufficient to guarantee the promised returns.  For example, between 2015 and 2017, his brokerage account sustained trading losses and was ultimately almost net flat over the duration of the account, which closed in June 2019.

### B.     **Ventrilla and Cygnus Defrauded the Advisory Clients**

22.     Defendants engaged in investment advisory fraud with the Advisory Clients.

23.     Ventrilla was introduced to most of the Advisory clients through Friend A (an individual Ventrilla had met in prison).

24.     Ventrilla, who executed investment advisory contracts on behalf of Cygnus, told his clients, directly or indirectly through Friend A, that Cygnus had the ability to make good returns for clients by investing their money in a portfolio of publicly traded stocks.

25.     Ventrilla told the Advisory Clients that he was able to guarantee high returns because he had experience successfully trading public securities.

26.     Ventrilla told his Advisory Clients and/or led them to believe that Ventrilla would manage their assets using separately managed accounts, and that Ventrilla would be paid some reasonable investment advisory fee.

27. Ventrilla's statements to the Advisory Clients were false and misleading because, at the time, he had no basis for telling them that his investments would yield profits sufficient to generate the promised returns or that he would use the client funds primarily for trading.

28. Ventrilla had client funds initially deposited into a Cygnus bank account and then he transferred those funds partially or entirely, to a bank account or a brokerage account in Ventrilla's name.

29. Instead of investing client funds, Ventrilla misappropriated a significant amount of their funds to support his lifestyle.

30. Ventrilla knowingly or recklessly deceived the Advisory Clients by misleadingly omitting to tell them that he was using their funds for his personal purposes, such as ATM cash withdrawals, food, healthcare and transportation.

31. Although Ventrilla orally communicated with these clients via Friend A, Ventrilla provided written documents directly to all of his Advisory Clients.

32. Ventrilla lied to his Advisory Clients about their investment portfolios by sending them periodic statements showing that their funds were invested in specific publicly traded securities and that these investments generally had positive returns.

33. The trading information contained in the account statements Ventrilla sent to his Advisory Clients was false.

34. As an initial matter, Ventrilla never established trading accounts for the Advisory Clients as promised and as the client account statements implied.

35. Rather, Ventrilla co-mingled the Advisory Clients' assets into Cygnus's bank account and Ventrilla's bank and brokerage accounts.

36. Ventrilla misappropriated a significant portion to support his lifestyle. For example, bank and brokerage records show that, from 2015 to 2019, Ventrilla transferred $179,867 from Cygnus's bank account into his personal brokerage account, and thereafter, he transferred $169,767 from his brokerage account into his personal bank account.

37. Ventrilla also used the Advisory Clients' assets to pay some quarterly interest payments due to the Note Investors.

38. Ventrilla knew or recklessly disregarded that his statements and representations to the Advisory Clients, at the time they were made, were false and misleading.

### C.  Defendants' Fraud Collapses

39. Ventrilla used only approximately ten percent of total funds he raised from the Note Investors and the Advisory Clients to trade securities.

40. Ventrilla used the majority of investor funds to support his lifestyle or repay Note Investors their promised interest and/or return of principal.

41. In 2019, the Defendants' fraud began to collapse. In July 2019, Cygnus's bank account, which then had only approximately $21,168 was frozen by the bank due to suspicious activity.

42. Since that time, Ventrilla opened a bank account for Cygnus at another bank that has received a total of $25,036 in investor funds, but by November 2019, its balance had dropped to less than $50.

43. In late 2019, with insufficient funds to pay Cygnus's Note Investors their quarterly interest payments, Ventrilla knowingly, or with reckless disregard, misled Note Investors by telling them that Cygnus's bank account had been frozen due to government action.

As Ventrilla was aware, or recklessly disregarded, the truth was that the bank froze the account due to suspicious activity resulting from Ventrilla's operation of a Ponzi-scheme.

44. Ventrilla knowingly or recklessly continued to mislead Note Investors by sending quarterly checks to these Note Investors as recently as March 2020, with instructions not to cash the checks because of the freeze.

45. As Ventrilla's fraud was collapsing, he created false documents to further deceive his Advisory Clients. For example, in April 2019, when one Advisory Client (Client A) asked for a partial account redemption, Ventrilla agreed and sent a check for the full amount.

46. Ventrilla knew or recklessly disregarded that that check could not be satisfied by the bank if deposited by the Advisory Client.

47. At the same time, however, Ventrilla also provided Client A with a fabricated letter, purportedly from Cygnus's bank stating that there had been a data breach which caused the Cygnus account to be frozen.

48. When Client A challenged the authenticity of the letter, Ventrilla admitted that he had forged the bank letter to buy time to secure additional money.

49. In an interview with the Commission staff, Ventrilla admitted that he engaged in wrongdoing: "things got a little out of hand, more than a little. I was using Peter to pay Paul and that was not supposed to happen, of course…. [I was] using [investor] funds to pay off another … because of the losses."

### FIRST CLAIM FOR RELIEF

**Violations of Section 17(a) of the Securities Act**
**(Against Ventrilla and Cygnus)**

50. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 6, 9 through 21, and 39 through 49 of this Complaint.

51. From at least September 2015 through at least March 2020, Ventrilla and Cygnus, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in connection with the offer or sale of securities: (a) employed, and are employing, devices, schemes and artifices to defraud; (b) obtained, and are obtaining, money or property by means of untrue statements of material fact, or have omitted, and are omitting, to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged, and are engaging, in transactions, acts, practices and courses of business which would operate as a fraud or deceit upon the clients of Ventrilla and Cygnus.

52. By reason of foregoing, Ventrilla and Cygnus, directly or indirectly, singly or in concert, have violated, are violating, and unless Cygnus is enjoined, will continue to violate Section 17(a) of the Securities Act [15U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**
**(Against Ventrilla and Cygnus)**

53. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 6, 9 through 21, and 39 through 49 of this Complaint.

54. From at least September 2015 through at least March 2020, Ventrilla and Cygnus, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities: (a) employed, and are employing, devices, schemes and artifices to defraud; (b) made, and are making, untrue statements of material fact, or have omitted, and are omitting, to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged, and are engaging, in transactions, acts, practices and courses of business which operated or would have operated as a fraud or deceit upon the clients of Ventrilla and Cygnus.

55. By reason of the foregoing, Ventrilla and Cygnus, directly or indirectly, singly or in concert, have violated, are violating, and unless Cygnus is enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule l0b-5 [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF

**Violations of Sections 206(1) and 206(2) of the Advisers Act )
(Against Ventrilla and Cygnus)**

56. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 6, 9 through 12, and 22 through 49 of this Complaint.

57. From at least September 2015 through at least March 2020, Ventrilla and Cygnus, acting investment advisers, directly or indirectly, singly or in concert, by use of the mails or any means or instrumentality of interstate commerce or of the mails, have employed, and are employing, devices, schemes and artifices to defraud their clients, and

have engaged, and are engaging, in transactions, acts, practices and courses of business which operate as a fraud and deceit upon their clients.

58.  By reason of the foregoing, Ventrilla and Cygnus, directly or indirectly, singly or in concert, have violated, are violating, and unless Cygnus is enjoined, will continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Commission respectfully requests that the Court enter Final Judgments:

### I.

Permanently, restraining and enjoining Defendant Cygnus, its agents, servants, employees and attorneys, and all persons in active concert or participation with it, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240. 10b-5], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

### II.

Ordering each of the Defendants, the Estate of Richard Ventrilla and Cygnus, to disgorge all ill-gotten gains, and ordering each of them to pay prejudgment interest thereon.

### III.

Ordering Defendant Cygnus to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## IV.

Ordering such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 14, 2020

Respectfully submitted,

*Sanjay Wadhwa*
Richard R. Best*
Sanjay Wadhwa (Bar Number 519704)
Alexander M. Vasilescu (Bar 2735143)
Gerald Gross*
James Hanson**
Attorneys for the Plaintiff
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0178 (Vasilescu)
* Not admitted in Northern District of New York
**Not admitted in NDNY
and will seek to be admitted